We have several cases on our docket this morning. Although we might change our minds, we plan to take a break after the third case, just to let you all know for housekeeping purposes. The first case is United States of America v. Wiggins. May it please the Court, Phil Lynch for Alarcon Wiggins. What I'd like to discuss this morning is whether the District Court violated Federal Criminal Procedure 11C1 and whether that violation should lead the Court to vacate Mr. Wiggins' plea and remand the case for trial. Rule 11C1 provides that the parties may engage in plea negotiations, but the rule specifically forbids the Court from participating. The rule says the Court must not participate. Nearly 20 years ago in the Rodriguez case, this Court said that Rule 11 and all the interpretive law makes it clear it is unmistakably prohibited that the judge cannot participate in any form. The Court has variously described this as an absolute ban, a bright-line rule, a rule that must remain inflexible, a rule that admits no exceptions. The District Court crossed that line in this case. It crossed that line perhaps because it misunderstood the law, particularly the Supreme Court's recent decisions in Lafler v. Cooper and Missouri v. Frye, but it crossed the line nonetheless. It may also have crossed the line out of good motive. It wanted to help Mr. Wiggins out as it saw it, but that's prohibited. Rule 11 doesn't admit of that exception either. The Court was informed both in writing, and that's at Record 479, and orally at Record 1590 by the defense attorney that Mr. Wiggins had— Can I just ask a factual question? Of course. It seems like the description of the proposed plea at the June hearing and then the actual plea that's in the record look very similar. Were there any changes between the two? Yes. He ended up with a couple of more—well, they agreed to a sentence, and he ended up a little bit closer to 20 than he might have if he had taken the earlier plea. But he also got lifetime supervision, and I don't believe that was a term that was involved in the first one. So that may have been an additional term that was added in my understanding. Okay, so walk me through—we have the June plea discussion. Put aside the Court's participation, we have the June plea discussion. He rejects that. The prosecutor said it's open until July 18 or something like that, and then ultimately we know we have an August plea. What happened in between? In other words, obviously he rejected the plea, but they kept talking in some form or fashion, with or without the judge's help. I'm putting that aside. I'm trying to get the facts of this plea. What happened in between? I think the record is not very clear on that. We can get pieces of it. There was, it appears, a motion in limine hearing sometime in July. He pleaded on August 8. On August 7, a couple of co-defendants in the case were sentenced. And apparently— That has nothing to do with the judge. I mean, interfering with the plea agreement. No, but I'm just trying to address Judge Haynes' question, but I think it does give the factual context. Well, I'm trying to get ultimately to the substantial rights question because I'm trying to understand how, if any way, the judge's— so even if we assume arguendo the judge's comments were improper, I'm trying to relate them to August. So I'm trying to understand the facts, but of course you should also address Judge Owen's concern. Right. I think that the reason that's important, Judge Owen, is it's not critical in any way, but it is part of the context because the district court itself mentions this at the plea hearing, and I believe in its order denying the motion withdrawal, which is a separate issue that I don't imagine we'll spend much time on today. And so the court recognizes that that's part of the context. And the court says in its order, I believe, that it had made some other sort of admonishment, which we don't have a record of because I guess that hearing was in a different case, to Mr. Wiggins after— or I guess after that August 7th hearing. So there's just a stray fact in the record that I believe is either at the Rule 11 proceeding or in its motion to withdraw. What it says is that Record 1518, it explained—no, I apologize. I'm wrong about that. But he did say, at the plea hearing, that—and I don't have the exact page number—that yesterday when I said this. So the sentencing of them plays a little bit into the context. But I think the important facts, okay, are these. Mr. Wiggins had long been preparing for trial. They'd been fighting this hard. He had flat-out rejected this plea. And at this June 27th plea hearing—and I think the facts there are very important, Your Honor. I think not just to show the violation, but to understand it. Okay, Mr. Wiggins, very determined. He said he was innocent. He wanted to go to trial. He has a strong personality. District Court's also a strong personality. District Court kind of takes over this plea negotiation. The defense counsel simply put on the record that he said, I want to put on the record he denied. I think we have rather clear what happened at that hearing. I'm trying to get the in-between because it wasn't like the next day he ran out and accepted. There was all this other stuff that happened, including the release of the two mothers of his children and all of that. So I'm trying to understand what is it that would show us from the record that the judge's comments were what continued to loom large rather than all these intervening events. I mean, what's happening in between? That's what I'm trying to get at. I understand that, Your Honor. But I'm suggesting to you that they start so strongly that that sends us downhill. And what we continue to do is gain momentum. Okay? Yeah, but I mean, even if improper, there was nothing coercive in the slightest about what the judge was doing. The judge was trying to explain. And, you know, you say the judge has a strong personality. He was also a very explaining personality, so he's explaining. So even if we can see that that's improper, even if we accept that, there's nothing where he's coercing him. Like, well, it's going to be a tough trial on you or whatever. In fact, he says, I'm ready to try this, let's try this, this is your decision, totally making that clear. I think there are two things there, Your Honor. One is that the law is clear that this is inherently coercive, particularly when the judge addresses, as he did here. What standard of review should we apply? I'm sorry, Your Honor? What standard of review are we applying? This is a plain error case. Okay. Judge Haynes is correct. Okay, I just want to make sure we're clear. Yes, Judge Haynes is correct. So get to the third and fourth prong. Yes, the four prongs, the third and fourth prongs, we're looking for substantial effect on his rights. But I think you have to look at it from the beginning. Okay, this is not a case of, oh, here's the hearing, here's the plea, we just look at the time. You have to look at what happened at the hearing. Okay? The judge took over that hearing. The judge had no right to do any of that, and the law is important here. That's one and two. I mean, the thing is, you're basically arguing, since you're not yet telling us anything new, that if you, in fact, engage in plea discussions as a judge, it's plain error, period, substantial rights, prong four, we're done. It's like an automatic error. No. Okay. Tell me what differentiates this, then, from the garden variety interference in plea, because this seems fairly light as interference with plea goes in my head. So tell me how this is not light and that this is bigger and that this, then, impacts prongs three and four. Okay. And I know you're not going to like this, but I have to go back to June. Okay, fine. Go. Because you have to look at it in the context of the law. And his statements are, in fact, strong. He directs defense counsel, tell him about what you told him, make him answer questions. Okay? That's a very strong intervention by the district court. But that's after the defense counsel says he wants to put stuff on the record. No. The defense counsel said he wants to put on the record that he refused to plea. That's perfectly okay. The judge needs to stop there. The defense counsel did not ask the judge to examine. Defense counsel asked if there was going to be a hard plea deadline, and that's at record 1590 and 91. At 1594, the district court directs him, get your client up here, and I want to hear you quiz him about the plea. Okay? So the judge is sending a strong signal at the very beginning that I'm interested in a plea and is increasing the inherent coercive pressure any time it gets involved. Then the judge still doesn't stop after he makes defense counsel do that. He then gets into it. He says, oh, you're going to get more time. Rodriguez tells us this kind of discussion of the probable consequences increases that inherent pressure. It also increases the misapprehension, the misimpression that the judge has a role to play. Okay, so then why wouldn't he mention that when he moves to withdraw the guilty plea? If it's so overwhelming what this judge did, why wouldn't he mention that? Because that would seem like a good argument. It would seem like a good argument. And perhaps that if we don't win this appeal that down the road that's an ineffective assistance of counsel on his. I'm sorry, Judge, but that's the answer. I don't know why his counsel didn't raise it. I certainly would have raised it. So then we have this very strong push at this hearing, very much the scenario we create is the scenario that he's in. Well, could there be another reason it wasn't raised, which is that Wiggins didn't feel any coercion, and so it's only after the fact that lawyers are trying to find a reason to set aside this whole situation that they find this, rather than that Wiggins, because if Wiggins felt coerced, as you say, he's a strong personality, what had he told his lawyer? His lawyer wouldn't have had to be real bright and effective to just parrot what the client says. Oh, I'm upset with the judge. I felt coerced. Well, I don't think we can make that, we can't speculate in that way. We have to look at the record. So the record, we have the June 27th, which I think is very strong, and I would like to be able to persuade you of that. I'd like you to go back and look at it and maybe see. I think it's very strong. I think the Court's very strong. But the Court says at the Rule 11 hearing, so I'm telling you about the non-binding recommendation, I'm telling you this is going to be the sentence in your case. Okay, this reinforces the idea that Wiggins correctly perceived that the judge wants a plea and that the judge wanted him to plead and that the sentence would be effective if he pleaded. Because the judge tells him at the Rule 11 hearing, and that's a record on Appeal 979, I'm telling you that's going to be your sentence. He says, I intend to honor that agreement, even though it's a non-binding. I don't intend not to honor that agreement. So he's, again, reinforcing the view, Mr. Wiggins, you need to plead. Okay? Then I think we have the quick turnaround that Mr. Wiggins demonstrates. He gets back and he says, I gave in. And he writes the letter to the judge and he says, I want to withdraw my plea because I'm innocent. He makes the whole record contains these strong assertions of innocence. And I think that's an important fact here, that what we had was somebody who felt pressured, not just by the situation, not just by the prosecutor's ability to add counts seemingly endlessly, but by the fact that the judge made it clear, you need to plead. I think those assertions of innocence are shown with this long trial prep, with this quick turnaround. He says, I don't really want this. And he made them again at the motion to withdraw hearing, because in determining whether there is a reasonable probability that he wouldn't have pleaded and he would have gone to trial, which is the standard, and reasonable probability is a standard that the Supreme Court's been telling us since Strickland, is less than a preponderance. It's just a probability that on this record, with these facts, there is a reasonable probability that Mr. Wiggins would have gone to trial. He gave in. But for the judge's conduct, not all this other stuff, I mean this seems very much centered on the effect of this situation on the mothers of his kids. That seems to be his whole focus, which has very little to do with the judge. That's the focus that came up in the motion to withdraw hearing, which is a separate issue, I think. We look at the whole record, but it's a separate issue. He brought it up. Right. But his attorney had his attorney argue this. That's a 2255 down the road. But I think the important point is his assertions of innocence. And even when he's explaining about the mothers, he's saying the people are going, the government says, well, he says that they're lying. Well, that's the point, the whole point of trial is to test the government's allegations. And the fact that he believed in his innocence, he wanted to test those allegations. He wanted to show that it wasn't true. And these pressures are what made him momentarily give in. And the judge played a big role in that. Because the judge puts the idea in his head most strongly that a plea is what you should do, a plea is best for you, and then when you add in thinking about the mothers of his children and his children, maybe that kicks in, too. So on the whole record, there's a substantial chance, a reasonable probability, that he would not have pleaded guilty and he would have gone to trial. And so because the court's involvement in this, violating the clear law, putting intense pressure on Mr. Wiggins, we would ask that the court exercise its discretion and vacate the plea. Do you disagree with the government's weighing of the factors that we normally consider, the other factors, the prejudice to the government, the loss of the witnesses, all of that? Oh, on the motion to withdraw? I think, as I said in my brief, that on the loss of the witnesses and the counsel leaving, it is an institutional litigate. We are pretty far along because of how long this appeal took, long before I was appointed. That's why it took so long. Yes, it is true in part. But, you know, so that factor right now at this point, at the time the district court made its decision, I don't think it weighed that much against the government. They are the institutional litigate. They do have the U.S. Marshals Service all around the nation at their disposal. They can find these people. They can serve these people. They can bring them back. So I thought on that that the district court. You're saying that factor just shouldn't be a factor because at least when the, I mean, how else is this going to come up? The United States is always going to be the party you're talking about. That's right. And because of that, the United States perhaps should have to show there's a little bit stronger factors in a particular case, and I don't think they did that here. I don't think they showed that these witnesses would be particularly hard for the Marshals Services to find. I think they put a lot of focus on the fact that the two prosecutors had left government service, one for retirement and one for another opportunity. But, you know, that's where it's important they're institutional litigate, and I am out of time. Excuse me. May it please the Court. This is a Rule 11 Plain Air case, and as Davila instructs, the particular facts and circumstances matter. And the first key facts are what the judge actually said. The first mention of the plea agreement is by defense counsel, and the defense counsel says there's a 20-year cap or if he goes to trial he's facing a life sentence. And the Court mainly reiterates what the meaning of a 20-year cap is, what a mandatory minimum sentence is, and what a consecutive sentence is. The reiteration of those factual statements didn't express an opinion, didn't create. If we were teaching a class for new federal district judges, would we tell them they should or should not have a colloquy such as these three or four pages that we're talking about? Well, the rule is the Court may not participate in the discussions, not that the Court may not comment, not that the Court may not get involved in negotiations, but the Court may not participate in discussions. So I think I agree that the Court can't go very far on that. It was brought up about whether there was an intersection between the Laffer and the Frey opinions and Rule 11. And I saw one, there is one published opinion, now it's the Hempel case, and the Hempel case was a terrible case. The Hempel case was, let me tell you about the Nuttall brothers, they could have gotten a six-year plea, instead they got 30 years. So it was blatant coercion. But the Court talked about Laffer and Frey, and it said that the Supreme Court suggested that trial courts should adopt certain measures to ensure that defendants are fully informed, such as documenting the terms of the negotiation process by requiring that all pleas are in writing and by making any formal offers. And then the Court goes on to say this, quote, the district court's comments went much further than documenting the plea offer or informing Hempel of its terms as contemplated in Frey. And then it goes on to say the district court clearly implied that the plea would be preferred. We don't have those facts here. But that sentence indicates to me that there's some leeway in informing a defendant about terms and ensuring that he understands the terms. My recollection, did that occur at the guilty plea hearing? I mean, I can see that occurring when you're getting ready to accept a guilty plea. But it's another thing to retrial. Well, Hempel was he refused a guilty plea. Okay. I think it is the facts are not the same because it's a clear coercion case. But the relative position of the litigants, I think, is the same. So if we were to write on this line between Loeffler making sure the terms are known and Rule 11 prohibition on participating in plea, how would we articulate this line in your view? I wouldn't draw a line on it. It's supposed to be a bright line test. And frankly, I think district courts would welcome probably that there be a bright line. If we're going to indulge in this thought that there is some role for the district court when a plea is rejected, it does seem to me there should be a bright line. Perhaps there isn't, and that's fine. But I would be interested in how you would draw it if you were to draw it. The rule allows no exceptions, right? So the reason I'm bringing up the relatively benign comments really goes to the prejudice. Yeah, but you just finished saying that it's appropriate for a district court to document the plea terms and so forth under Loeffler. I said that there's a suggestion in Hempel that you could read that sentence to say that. Is it or is it not appropriate for the district court to document the terms of a rejected plea? I think that's true. I think the Supreme Court is required. What is the line between the documenting the plea terms, the rejected plea terms, and engaging in the prohibited Rule 11 participation? Well, if you say, if the defense counsel says he's rejected this plea agreement, that's not enough, is it?  So I think certain terms have to be outlined and discussed, and discussed with the defense attorney. We're on plain air here, and there's an unpublished opinion. It's Larrier. And for plain air, there can't be any dispute among jurists of reason. And Larrier says this. He says the court's comments, when read in context, do not reflect obvious improper participation. So you're on the plain air idea that you really need to show obvious improper participation. It says the challenge remarks were made in the context of answering Larrier's inquiries, addressing his misunderstandings about the guilty plea process, and ensuring she understood the choice of pleading guilty or going to trial. In that case, the court found not to be an overstepping of the line, but it wasn't drawn particularly specifically. Can you discuss what, so what other than the judge's comments at the June hearing caused Wiggins to accept an offer, you know, six weeks later that he had not originally accepted? Kind of your response to whatever answer I got on that. Right. I think there were two things. I think it was four days before trial, which was a great impetus for him to plead guilty, and one day before the plea, the prosecutor said, well, the plea agreement says $220,000 maximum. I'll recommend $212,000, which is what he actually got. So I think those two things were— What about the release of the mothers? When did that take place? I thought that was fairly shortly before this. It was after he accepted, but before he withdrew. That was it. Exactly. Okay. The plea took place on August 8th. Smith and the other woman were released on August 20th. He sent the letter on postmarked August 23rd, saying I want to withdraw my plea. And then new counsel filed the motion. Which does suggest it was the mothers that was motivating it. Well, it could be. That's not an improper consideration, pleading guilty. He said he didn't know they were released when he wrote the letter. I think he did say that at the hearing, Your Honor. I think he did say that at the hearing. Is there any evidence to the contrary? Were there any other—I'm sorry? Is there any evidence to the contrary? No. Not that I know of. Not that I know of. Going to the third problem. A demonstration that it's reasonably probable. Let me understand the 220 to 212 thing. What you're saying is that originally the prosecutor was going to recommend 220 months, but then agreed to recommend 212. So actually a better term. One day before the plea. Okay. And that's recorded or reflected in the hearing. So going to the third problem, which I think is the most important, but for the judge's exhortations, he would have exercised his right to go to trial. And, again, the reason I go through the beginning part is Wiggins hasn't pointed to any statement by the judge  Instead the judge says, I'm ready to go try the case. The one thing that he's relied on, you notice that there are not a lot of quotes about coercive type language. And he says, well, the agreement, the judge says the agreement limits my sentence. But this occurred in response to the defense counsel's statement that there was no agreement as to any sentence. And then the court asked, do you understand that? And Wiggins says, I don't understand that. And the court says, let me tell you what that means. The plea agreement that your lawyer explained to you earlier limits my sentence. I cannot sentence you to more than 20 years. But what the better practice has been for the judge at this point where he's tried to explain it, the defendant keeps saying he doesn't understand, is to say, look, I'm going to take a break, and I'm going to let you talk to your lawyer because you seem to be confused about where we are, and I don't want there to be any confusion. And then take the break. Okay. That's what they should have done. I agree. That would have been the better practice. But it's important that you go through all of the cases. Every case that's cited is either a blatant coercion case or I'm going to agree to a sentence. We have nothing like that here. And it's important to bring up the fact, again, that Judge Haynes, that you brought up. There's two letters that he sentenced, one to his lawyer and one to the judge, saying that he wants to withdraw the plea. There's two motions by counsel, one motion and then an addendum to that motion. So in all four of those motions to withdraw the plea, there's no mention about judicial participation. How can there be? Well, and he appears at the hearing and is heard at the hearing, and therefore he wiggens. So he's not just relying on his lawyer to file papers. At the hearing he never complained. There's no complaint about judicial participation. There's nothing in that hearing about judicial participation. And so the status conference is the 27th of June. The plea was 42 days after the status conference. And as I mentioned, four days before trial and one day before the letter offering a recommendation. You also, I think, need to look at the subject that's first introduced by defense counsel. And the way it's introduced is, quote, I would like your honor to inquire of another matter. Now, I know it's been said that he didn't really mean that, but that's very unusual language to I would like your honor to inquire of another matter and then to start talking about the plea offer. Finally, these factors have gone in as to, in some cases Holmes is one of those cases, as to whether the third prong has been met. Again, he swore under oath that his plea wasn't coerced and that the government could prove the underlying offenses. And then the fourth prong discretionary factor, the same facts, I think, come in, that it's rather benign comments and the judge didn't say anything that would lead you to believe he wasn't a neutral arbiter. And I think that's all I have to say on the first issue. I didn't hear much on the second issue. Do you want me to go through the points on? I think maybe the only thing I would say is, again, the Clark case, you can't just say I'm innocent. You have to, mere assertion of innocence, absence of substantial support in the record is insufficient. And maybe one more thing, as to prejudice of the government, the counsel says, well, the two prosecutors who were no longer available, who prosecuted all the other folks, they're fungible, so it doesn't really matter that they're no longer available. Well, in Clark, they found prejudice to the government where key investigators were no longer available. So I think that's analogous. And then as to the reason itself that I pled because I wanted leniency for the two women, well, first of all, the prosecution can't let them go. They've been indicted. They've pled guilty to trafficking in persons, and they're subject to the court sentence. In fact, the court sentenced them to time served. But the prosecution couldn't agree that they would be let go. And anxiety about a spouse's fate doesn't equate to constitutionally impermissible coercion. And if there's no further questions, that's all I have. Thank you. You're not fungible. I want to clarify the law a little bit. There is no need for the district court to put specific pressure. I think the context of these comments shows pressure. But this court has made it very clear that discussion of the probable consequences increases the already inherent pressure. There is inherent pressure any time the district court comes into plea negotiations. The district court came into these plea negotiations. We have inherent pressure. Then it's increased when he starts talking about you're going to get more time if you go to trial, the probable consequences of the plea. That increases the inherent pressure. But to the extent the government is saying. Did he say you are going to get more time or simply that. He said if you go to trial. The potential sentence. If you go to trial and you get convicted, you will get more time than you will under this plea agreement. No. Yes. And he said that not just once. He said it at least twice. He said you could get more time. Yeah. Again, this is why I think the June 27th hearing is so important, Judge Haynes. Go back and look, particularly from pages 1597 to 16. No, I just read it again this morning. He didn't say you will. The possible sentence is higher. No, in fact, he is saying you will because there are mandatory minimums involved and consecutive sentences involved. So you are going to get more time. And so when he's explaining that to him, he's saying you're going to get it. He's saying that there are restrictions on his ability to work on the sentence. But I don't know that he sat down and mapped out the exact amount of time. He said there's some mandatory minimums. And I don't know how that would work out on concurrent and consecutive because I only saw 15 and 5. I didn't see anything that was more than 20. So I don't know that that was clear on the concurrent and consecutive and how that would add up. Well, he tells them they have two gun counts. So right there, that's a consecutive 10, 5, and 5. But, again, the important point for the law is that the government is suggesting there has to be some sort of blatant coercion, and that's not true. As to your question about Lafleur Frye and what should we tell the district court, I mentioned in my brief the Crouse case from the Seventh Circuit, which cites Miles, which is a case from this court from 1993. And what Crouse says, citing Miles, is that when defense counsel asked the judge to become involved, to say something to the defendant about the possible plea offer, the correct response for the judge is to say no. Rule 11 forbids that. That's your job. Okay. Can you just be clear then for me, if he had gone to trial and been convicted on all the counts, what would the mandatory minimum have been, taking into account all of the mandatory consecutives? I think the mandatory minimum would have been 25 because he had two gun counts, so 15 mandatory minimum on the trafficking. And the trafficking cannot be concurrent with the guns? No. The guns have to be consecutive. The guns have to be consecutive. But the guns have to be ‑‑ okay. And was that clearly spelled out? Because I didn't see him come to the 25 conclusion. No, he didn't talk about that specifically. Okay. But, again, I think it's the fact that he's talking about the probable consequences. I think what's important in the Lafler-Frey, because this is important for the law, is that Frey does not suggest that the fact that counsel may be ineffective by not communicating a plea offer. And, of course, counsel is ineffective, but we expect better of the bar. But we are not, and the court is not changing all the rules, not changing Rule 11 because there are a few members of the bar who don't do their jobs. When Frey says it can be put on the record, Frey is not suggesting, and it's at 1408 and 1409 at 132 Supreme Court, that the court should engage in this type of discussion of what's a plea negotiation. This court has made it very clear that Rule 11 says if the agreement hasn't been reached and disclosed, the district court has no point in discussing it. Frey doesn't change that. Frey says you could make a record, and if you read Frey, I think it's mostly suggesting, when it refers to the Arizona, that you could do it in writing by filing things with the court before trial. So I would ask that the court reverse that. I appreciate your consideration. Thank you, counsel.